(80 P.3d 396)

No. 88,484

## In the Interest of B.H. and N.H.

Opinion filed April 25, 2003.

*Kip Johnson*, of Saindon & Johnson, P.A., of Ellis, for the appellant natural father.

*Thomas J. Drees*, county attorney, for the appellee.

Before KNUDSON, P.J., BRAZIL, S.J., and BUCHELE, S.J.

BUCHELE, J: The natural father of N.H. and B.H. (children) appeals the termination of his parental rights. He claims that the delay in reaching trial of this case violated his due process right; the trial court erroneously admitted evidence of an alcohol counselor and individual therapist; and there was a lack of substantial evidence to support unfitness or that he was likely to change in the foreseeable future. We disagree and affirm.

On May 20, 1999, the State filed a child in need of care (CINC) petition as to the children. The petition alleged, among other things, that the father had approached Social and Rehabilitation Services (SRS) asking for assistance because the family was without housing, food, gas, and electricity. Records revealed the children had been in SRS custody in June 1998, and had been removed from the home on previous occasions for medical neglect, allegations of sexual abuse, and allegations of physical neglect.

On May 25, 1999, a temporary custody hearing was held and the district court found probable cause to believe the children were in need of care. SRS was given custody pending further hearings. The father stipulated the children were in need of care at an adjudication hearing. The court adopted nine conditions which the father had to meet to establish reintegration. A dispositional hearing was scheduled for October 27, 1999.

At the October dispositional hearing, the parties requested a continuance because the father had not completed the court-ordered evaluation and the children were being reintegrated into the residence of the father and his sister, T.W., who was living with him and helping to care for the children. The hearing was rescheduled for December 20, 1999. The children had been returned to their father's care on October 27, but were removed again on November 23, 1999, after a violent dispute between the father and T.W. On January 27, 2000, the district court transferred the case from Trego County to Ellis County based on the father's motion.

On March 31, 2000, a dispositional hearing was scheduled but, after two different recording devices malfunctioned, the father objected to continuing the hearing without a recording. After several

continuances, a dispositional hearing was held on August 16, 2000. The father objected to the proposed journal entry of the August 16 hearing, and the district court scheduled October 13, 2000, for a hearing on the father's objection. The court concurred with the father that the new circumstances of his recent marriage should be considered before severance could occur. The parties agreed that a new home study could not be completed by November 2, thus, the November 2 hearing would be used as a review hearing to examine the new home study. The court noted any delay would be in the father's favor because it would give him a chance to develop his case for having the children returned to him. The State noted it could not file a motion to sever until it had all the information about the new family.

On November 2, 2000, a review hearing was held and a severance hearing was scheduled for January 24, 2001. The January 24, 2001, severance hearing was continued by consent of the parties to July 23, 2001, because more time was needed to review the new home study.

On June 5, 2001, the father filed a motion to dismiss arguing that the children were adjudicated children in need of care on September 18, 1999; the State had set the matter for severance several times, but no such motion had ever been filed; he had substantially complied with all aspects of the reintegration plan; and the State had not used reasonable efforts to reintegrate the children.

On July 3, 2001, the State filed its request for severance of parental rights, stating it was relying on a presumption of unfitness pursuant to K.S.A. 38-1585(a)(5) and 38-1585(a)(6).

On July 23, 2001, the matter came on for severance hearing. The father argued the case should be dismissed because the matter had been set for severance four times, but the State had never filed the severance petition until recently; the State had not used reasonable efforts during the past 2 years to effectuate a reintegration program; disposition was held a year after adjudication; and reintegration was never attempted after the children were removed in November 1999. The court took the father's motion under advisement and found jurisdiction as to severance was lacking until serv-

ice was made on the maternal grandfather. Thus, the severance hearing was continued to October 16, 2001.

Finally, a severance hearing was held on October 16 and 17, 2001. The father renewed his motion to dismiss because the case had not proceeded in a timely manner. The district court never specifically overruled the motion to dismiss, but by proceeding, it essentially denied the motion to dismiss.

The resolution of this issue involves a determination of whether the procedural language of K.S.A. 38-1561 and K.S.A. 38-1581(c) is mandatory or directory. "This court's standard of review is unlimited as the interpretation of a statute is a question of law. [Citation omitted.]" *State v. Residential Unit & Real Estate*, 26 Kan. App. 2d 260, 261, 983 P.2d 865, *rev. denied* 268 Kan. 893 (1999).

The father contends the language of K.S.A. 38-1561 and K.S.A. 38-1581 is mandatory and failure to follow the mandates of the statutes violated his due process rights. K.S.A. 38-1561 provides: "The order of disposition may be entered at the time of the adjudication, but shall be entered within 30 days following adjudication, unless delayed for good cause shown." Pursuant to K.S.A. 38-1581(c):

"The county or district attorney or the county or district attorney's designee shall file pleadings alleging a parent is unfit and requesting termination of parental rights or the establishment of a permanent guardianship within 30 days after the court has determined reintegration is not a viable alternative unless the court has found a compelling reason why adoption or permanent guardianship may not be in the best interest of the child. The court shall set a hearing on such pleadings and matters within 90 days of the filing of such pleadings."

The father asserts he was denied his rights to parent his children from November 1999, when the children were removed from his house for a second time, until disposition, held on August 16, 2000, some 9 months after the removal of the children and 15 months after adjudication. He alleges he was denied his rights to parent his children until severance, which did not occur until October 2001, over 2 years after the removal of the children from his home. Further, the father argues he was denied due process by the State's continuous failure to file its motion to sever. He contends the continuance of the severance hearings were not in his best interest

because the State's failure to continue reintegration in good faith after adoption became the case plan goal, coupled with the State's failure to timely file the motion to sever, gave the impression he was not making efforts to reintegrate the children and had the effect of substantially denying him due process of law.

In the case of *In re J.L.D.*,14 Kan. App. 2d 487, 490, 794 P.2d 319 (1990), the court stated:

"When the State seeks to terminate the relationship between a parent and child, it must do so by fundamentally fair procedures that meet the requisites' of due process. *Santosky v. Kramer*, 455 U.S. 745, 752-54, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982). Thus, the question is in each case, including the case before us, what process is due. Due process is not a static concept; rather, its requirements vary to assure the basic fairness of each particular action according to its circumstances."

Our review of the record does not show that the father's due process rights were violated in this case. Many of the delays were either requested, agreed to, or caused by the father and some were made by the court to give the father more time to comply with the goals of integration. Also, we do not recognize how the father was prejudiced by the fact the State did not file its motion to sever until July 3, 2001, given the termination hearing was not held until October 16, 2001. The father was represented by counsel throughout the pendency of the case and had sufficient timely notice of the factors the State was relying on in requesting termination. Moreover, the father requested some of the delay in filing the severance motion when he remarried and the State was required to do an entire new home study and consider all the new circumstances.

The language regarding time limitations for dispositions of a child in need of care case stated in K.S.A. 38-1561 and K.S.A. 38-1581(c) is directory, not mandatory. The criteria for determining whether a statute should be deemed mandatory or directory was stated in *Lyon-Coffey Electric Coop, Inc. v. Kansas Corporation Comm'n*, 29 Kan. App. 2d 652, 660-61, 31 P.3d 962, *rev. denied* 272 Kan. 1418 (2001):

"Whether language in a statute is mandatory or directory is determined on a case-by-case basis, and the criteria is whether compliance with the language is essential to preserve the rights of the parties. *Marais des Cygnes Valley Teachers'*

*Ass'n v. U.S.D. No. 456*, 264 Kan. 247, 251, 954 P.2d 1096 (1998). If it is essential to the preservation of the rights of the parties, the statute is mandatory. Factors indicating the provisions of a statute are mandatory are: (1) the use of negative words that require an act shall be done by no other method or at no other time than that stated, or (2) provision for a penalty or other consequence for noncompliance. 264 Kan. at 251. The statute is directory where the provision establishes a manner of proceeding and a time within which an official act is to be done and is intended to secure order, system, and dispatch of the public business. 264 Kan. at 251."

In *State v. Residential Unit & Real Estate*, 26 Kan. App. 2d at 261, the court dealt with the language of K.S.A. 60-4113(g) of the Kansas Standard Asset Seizure and Forfeiture Act (KSASFA). Under K.S.A. 60-4113(g), "the hearing on the claim shall be held within 60 days after service of the petition unless continued for good cause." The case, however, was set more than 60 days after service of the petition and the hearing was held more than 100 days after service of the petition. 26 Kan. App. 2d at 261.

The *Residential Unit & Real Estate* court held:

"K.S.A. 60-4113(g) is a matter of convenience rather than substance. It gives a view to the proper, orderly, and prompt conduct of business; has no words of absolute prohibition; and does not provide a penalty for noncompliance. If a party has complied with statutory provisions requiring action, then subsequent procedural steps to be taken by the court are directory, and the review proceeding is not defeated by defects created or matters overlooked by court personnel. [Citation omitted.]" 26 Kan. App. 2d at 263.

The *Residential Unit & Real Estate* court also noted that under K.S.A. 60-4123, the Act is to be liberally construed. 26 Kan. App. 2d at 263.

In the case of *In re T.K.*, 11 Kan. App. 2d 632, 633-34, 731 P.2d 887 (1987), the court held the 30-day time period under K.S.A. 38-1683(a) was directory, not mandatory. Although the 30-day requirement is clear and unambiguous, the court held it had to be read in concert with K.S.A. 38-1601, which instructed that the Kansas Juvenile Offenders Code be " 'liberally construed' for the ends enumerated." 11 Kan. App. 2d at 636. Also, "a rigid and legalistic interpretation of the appeal provisions does little to further the parental interests of the State. While the clear purpose of 38-1683(a) is to provide a prompt review of the district magistrate

judge's decision, order and promptness are the general characteristics of a directory statute." 11 Kan. App. 2d at 636. Further, the legislature provided no remedy where the 30-day limit was transgressed and the main legislative purposes were not defeated when a hearing was not promptly held. 11 Kan. App. 2d at 637. See also *State v. Fink*, 217 Kan. 671, Syl ¶ 3, 538 P.2d 1390 (1975) (language requiring a preliminary hearing within 10 days of arrest or personal appearance is directory); *In re Flournoy*, 5 Kan. App. 2d 220, 223, 613 P.2d 970 (1980) (language requiring a hearing within 2 weeks after filing a petition is directory).

Although time limitations for a child in need of care case are stated in the statutes, they must be read in concert with K.S.A. 38-1501, which instructs that the Kansas Code for Care of Children shall be liberally construed. The time frames prescribed by the statutes are to see that a severance case is expeditiously resolved and to protect parties from unreasonable delay. But, a rigid interpretation of the statutes would do little to further the end that each child shall receive the care, custody, guidance, control, and discipline, preferably in the child's own home, as will best serve the child's welfare and the best interests of the State. The legislature has provided no remedy where the time limits were transgressed. The father has not shown his rights were prejudiced by the delay or that it is in the interests of the child that the case be dismissed. We find the trial court did not err in refusing to grant the father's motion to dismiss.

The father argues the trial court erred by allowing testimony from his individual drug and alcohol counselor and his individual therapist.

"When determining whether evidence was properly admitted at the trial court level, the appellate courts utilize an abuse of discretion standard of review. [Citation omitted]. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. [Citation omitted]. Wide latitude is given to the district court in determining what evidence to admit. [Citation omitted]. The appellant has the burden of showing why admitted testimony should have been excluded. [Citation omitted]." *State v. Alexander*, 268 Kan. 610, 617, 1 P.3d 875 (2000).

K.S.A. 38-1514(b)(1) provides for the evaluation of development or needs of a parent and states:

"*Physical, psychological or emotional.* During proceedings under this code, the court may order an examination, evaluation and report of the physical, mental or emotional status or needs of a parent. . . . Written reports and other materials relating to the examination and evaluation may be considered by the court but, if requested by any interested party in attendance, the court shall require the person preparing the report or other material to appear and testify."

K.S.A. 38-1514(c)(1) addresses the confidentiality of the reports and states: "No confidential relationship of physician and patient, psychologist and client or social worker and client shall arise from an examination or evaluation ordered by the court." See *In re K.G.O.*, 12 Kan. App. 2d 7, Syl ¶ 1, 738 P.2d 98 (1987) (K.S.A. 38-1514[c][1] creates an exception to the confidential relationship between a psychologist and a client.).

The father contends K.S.A. 38-1514(b)(1) and (c)(1) do not apply because the court did not order any drug or alcohol evaluations. Thus, K.S.A. 65-6410 and 65-5603 should have applied, thereby making the information privileged. Although the conditions agreed to at the adjudicatory hearing required him to comply with the recommendations of Youthville and later St. Francis, the court never specifically ordered him to obtain such an evaluation. The father argues even if this court concludes there was an implied order, the only evidence that should have been admitted without his consent was the actual evaluation, not the testimony regarding his treatment. According to the father, the district court could not have found he had an alcohol problem without the testimony of the drug and alcohol counselor and his individual therapist.

Richard Duncan, a substance abuse specialist for SRS, did the drug and alcohol evaluation in January 2000. At the hearing, the father asserted that Duncan's testimony was privileged pursuant to a ruling by Magistrate Judge Flax. The State argued it was implicitly ordered because the father was ordered to follow through on Youthville's recommendations and the evaluation was done at Youthville's request. The district court agreed with the State and admitted Duncan's testimony and evaluation over the father's objection.

Duncan's evaluation concluded that the father needed inpatient treatment for alcoholism because of his self-reported history of drinking, intent to keep drinking as pain medication for his knee, and his report that he sometimes loses control and becomes violent when drinking. The father described three incidents to Duncan when he was intoxicated and got into physical confrontations. The father also said he had been drinking when the violent domestic dispute with his sister occurred. The father told Duncan he did not need inpatient treatment and refused to sign any releases for treatment centers.

At the September 17, 1999, adjudication hearing, Judge Flax ordered the father to obtain a parenting psychological evaluation, to follow all recommendations made in such evaluation, and to participate with Youthville services and follow their recommendations. Dr. Kohrs' evaluation was apparently the parenting evaluation the court specifically ordered, while Duncan's evaluation was based solely on a referral from United Methodist Youthville (Youthville). In a March 2000, journal entry, however, Judge Flax specifically considered the issue of privilege, noted that he had ordered the father to follow the recommendations of Youthville and stated: "Youthville recommended an alcohol evaluation. The Court rules this is admissible as a Court ordered report."

Thus, even if the order was implicit at the time the evaluation was completed in January 2000, Judge Flax later ruled it was a specific order based on Youthville's recommendation. Therefore, pursuant to K.S.A. 38-1514(c)(1), the evaluation was court ordered and was not privileged. The district court did not abuse its discretion in admitting Duncan's alcohol evaluation.

The father does not specify which individual therapist's testimony should have been excluded. Various "individual therapists" testified, including Jane Kohrs, Brett Murray, and Nancy Dreiling. Presumably, he objects to Dr. Kohrs' testimony because under the court's finding of alcohol addiction or abuse as defined, the court stated: "Dr. Kohrs believes that lack of alcohol treatment and the lack of cooperation with counselors indicates a poor prognosis." Dr. Kohrs' evaluation was apparently the court-ordered parenting psychological evaluation. Thus, it also was not privileged.

Regardless of whether any individual therapists' testimony should not have been admitted, the district court had sufficient competent evidence to make a finding of an alcohol problem based solely on Duncan's evaluation. Moreover, there is evidence from which the court could have found the father had an alcohol problem without the testimony of Duncan or any individual therapist. For example, the father admitted to Belinda Hartman that he was drinking when he got angry with his sister and sometimes he "blacks out" and doesn't know what he is doing when drinking. Alcohol abuse was only one of several reasons the court terminated the father's parental rights.

We find no error in admission of the testimony.

The applicable standard of appellate review in a termination of parental rights case is "not whether the record contains substantial competent evidence of a clear and convincing nature but whether there is substantial competent evidence in the record to support the trial court's decision that the parent was unfit and that parental rights should be terminated." *In re S.M.Q.*, 247 Kan. 231, 240, 796 P.2d 543 (1990). The appellate court "cannot reweigh the evidence, substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses. This court must review the evidence in the light most favorable to the party prevailing below. [Citations omitted.]" *In re A.N.P.*, 23 Kan. App. 2d 686, 692, 934 P.2d 995 (1997).

When considering the factors for terminating the rights of a parent under K.S.A. 2002 Supp. 38-1583, the court must give primary consideration to the physical, mental, or emotional condition and needs of the children. The existence of any one factor listed under K.S.A. 2002 Supp. 38-1583 may, but does not necessarily, establish grounds for termination of parental rights, and the determination must be based on an evaluation of all applicable factors. K.S.A. 2002 Supp. 38-1583(e).

Here, in determining that the father was unfit and his parental rights should be severed, the district court found the following K.S.A. 2002 Supp. 38-1583(b) factors existed: K.S.A. 2002 Supp. 38-1583(b)(1)("[e]motional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or na-

ture as to render the parent unlikely to care for the ongoing physical, mental and emotional needs of the child"). The court found the father has a physical disability and a mental deficiency as described under K.S.A. 2002 Supp. 38-1583(b)(1). The father is physically disabled with a sole source of income of $550 per month from SSI payments; he is unable to provide for his own needs on this income, much less the needs of his children. He also has demonstrated an unwillingness to cooperate with service providers who assist in proper budgeting and financial management, although given many opportunities to do so. During the pendency of the case, the father lived in five different residences, some lost due to nonpayment of rent.

The trial court also noted that notwithstanding his limited means, the father purchased a stereo system requiring monthly payments of about $178, leaving little money for basic necessities. Further, Dr. Kohrs testified the father had a life-long learning disability with a low average to borderline IQ. Although borderline individuals can successfully raise children, alcohol issues, moodiness, low self-worth, high impulsivity, and poor judgment skills would work against his success as a parent. Also, there was testimony from social providers that the father refused or reluctantly accepted services and could only function successfully with help from providers and his female companions. There was no evidence these overriding deficiencies were likely to improve with help or over time.

Also K.S.A. 2002 Supp. 38-1583(b)(2) (conduct toward a child of a physically, emotionally or sexually cruel or abusive nature) applied because when SRS took custody of the children in May 1999, they both had head lice, N.H.'s teeth were seriously decayed and she needed dental surgery, and she had a urinary tract infection. The father would "head butt" with B.H. As a manner of discipline, the father yelled and screamed at the children until they would shake. Further, he seemed disinterested in N.H., which is a form of emotional abuse, and both children were developmentally and socially delayed when SRS took custody, but they significantly improved while in foster care.

The trial court also cited K.S.A. 2002 Supp. 38-1583(b)(3) (excessive use of intoxicating liquors or narcotic or dangerous drugs), noting the father has an alcohol addiction, but refused treatment. Further applicable factors were K.S.A. 2002 Supp. 38-1583(b)(7) and (b)(8) (reasonable efforts by appropriate public or private child caring agencies have been unable to rehabilitate the family; and lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child). The court found substantial evidence was presented of reasonable efforts by appropriate agencies to rehabilitate the family, but the father did not make sufficient effort to adjust his circumstances, conduct, or conditions to meet the needs of the children.

K.S.A. 2002 Supp. 38-1583(c)(3) (failure to carry out a reasonable reintegration plan) also applied because the children have not been in the father's physical custody and he has failed to carry out a reasonable plan directed towards the reintegration of the children. In terminating the father's parental rights, the court considered the above factors in light of the physical, mental, and emotional needs of the children.

The testimony of the many individuals involved with the family provides sufficient competent evidence to terminate the father's parental rights. Reviewing the evidence in the light most favorable to the party prevailing below, there was substantial competent evidence in the record to support the trial court's decision that the father was unfit by reason of conduct or condition which rendered him unable to care properly for the children and the conduct or condition was unlikely to change in the foreseeable future.

Affirmed.