NOT DESIGNATED FOR PUBLICATION

No. 116,278

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of K.D.B. and D.M.B.,
Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ROBB W. RUMSEY, judge. Opinion filed July 14, 2017. Affirmed.

*Jennifer Lautz*, of Lautz Law, LLC, of Wichita, for appellant adoptive mother.

*James P. Ruane*, of Wichita, for appellant adoptive father.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before HILL, P.J., MCANANY and ATCHESON, JJ.

*Per Curiam*: L.B. and M.B., the adoptive mother and father to K.D.B. and D.M.B., appeal the decision of the Sedgwick County District Court terminating their parental rights to the two girls. They challenge the sufficiency of the evidence supporting termination. And they argue a lengthy delay in the adjudication hearing, which was ultimately combined with the termination hearing, tainted the outcome. We find no basis to set aside the termination order and, therefore, affirm the district court.

We first outline legal principles relevant to termination hearings and other proceedings under the Revised Kansas Code for Care of Children, K.S.A. 2016 Supp. 38-2201 et seq. We then take up the parents' procedural point regarding the timing of the hearings and finally turn to the adequacy of the evidence. We intersperse factual background and procedural history as necessary to place the legal issues in context.

1

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2016 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

The process outlined in the Revised Kansas Code for Care of Children entails sequential judicial determinations aimed at securing the safety and welfare of children who may be in jeopardy in their homes. K.S.A. 2016 Supp. 38-2201(b)(1) ("safety and welfare of a child to be paramount in all proceedings under the code"). If circumstances indicate a child to be at risk, the State files a petition to have the child adjudicated as being in need of care. See K.S.A. 2016 Supp. 38-2201(d) (defining child in need of care); K.S.A. 2016 Supp. 38-2233 (filing of petition). The child may then be removed from the home, and the parents typically undertake a plan, designed in conjunction with social service agencies, to assure the child's wellbeing and to permit reintegration of the family unit. If those efforts fail, the State may seek to terminate the parents' right to raise their child.

As provided in K.S.A. 2016 Supp. 38-2269(a), governing termination, the State must prove a parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2016 Supp. 38-2269(b). And the statute lists four other factors to be considered if a parent no longer has physical

custody of a child. K.S.A. 2016 Supp. 38-2269(c). In addition, the State may rely on one or more of 13 statutory presumptions of unfitness outlined in K.S.A. 2016 Supp. 38-2271.

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational factfinder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved to the State's benefit and against L.B. and M.B.

Having found unfitness, the district court must then decide whether termination of parental rights is "in the best interests of the child." K.S.A. 2016 Supp. 38-2269(g). As directed by the language of K.S.A. 2016 Supp. 28-2269(g), the district court must accord "primary consideration to the physical, mental[,] and emotional health of the child." The district court makes that determination based on a preponderance of the evidence. *In re R.S.*, 50 Kan. App. 2d at 1116. The best-interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

L.B. and M.B. both complain that the evidentiary hearing to adjudicate K.D.B. and D.M.B. as children in need of care was continued multiple times—for about 18 months—and ultimately combined with the evidentiary hearing in November 2015 to terminate their parental rights. The record is spotty as to the reasons for each of the continuances. L.B. requested and received several continuances because she had criminal charges pending against her associated in some way with the circumstances leading to K.D.B. and D.M.B being removed from her home. The district court overseeing the criminal case entered and later lifted an order prohibiting L.B. from having any contact with K.D.B. and D.M.B. L.B. argued that her testimony in an adjudication hearing could be used against her in the criminal case, as could out-of-court statements to social workers and others involved in attempting to reintegrate the family. The State requested and received one continuance of the adjudication hearing. The district court rescheduled the hearing three other times, but the record fails to indicate why. Somewhere along the line, the criminal charges against L.B. were dismissed. Those charges do not play a direct part in the substantive determinations in this case.

L.B. and M.B. emphasize that an adjudication of a child's status as being in need of care must be entered within 60 days of the filing of the petition "unless good cause for a continuance is shown on the record," as provided in K.S.A. 2016 Supp. 38-2251(c). If a district court determines a child to be in need of care, the case continues. If the child is not in need of care, then the district court should dismiss the case. See K.S.A. 2016 Supp. 38-2251(a) and (b). On appeal, M.B. also points to the policy pronouncement in K.S.A. 2016 Supp. 38-2201(b)(4) calling for prompt disposition of proceedings as supporting his argument that the delay in conducting the adjudication hearing should undercut or negate the district court's ultimate decision to terminate parental rights.

We are unpersuaded. The policy statement in K.S.A. 2016 Supp. 38-2201(b)(4) and the time directive for rendering an adjudication of a child as a CINC in K.S.A. 2016

4

Supp. 38-2251(c) neither impose mandatory deadlines that deprive a district court of jurisdiction nor create affirmative defenses in favor of parents. This court has already recognized that the 60-day period in K.S.A. 2016 Supp. 38-2251(c) for adjudication is directory rather than mandatory, so exceeding that time imposes no jurisdictional bar to further proceedings. *In re L.C.W.*, 42 Kan. App. 2d 293, 296-97, 211 P.3d 829 (2009). See also *In re B.H.*, 32 Kan. App. 2d 12, 16, 80 P.3d 396 (2003) (finding similar time constraints in predecessor to Revised Kansas Code for Care of Children to be directory rather than mandatory).The statutes reflect a legislative intent that the process move forward deliberately and with dispatch for the benefit of the children in attaining permanency—whether it be through restoration to a rehabilitated family unit or through termination of the parental rights in conjunction with adoption or some other extended placement. See *In re M.E.B.*, 29 Kan. App. 2d 687, 690-91, 29 P.3d 471 (2001) (construing predecessor code). Those considerations, however, do not endow parents with a right comparable to the statutory speedy trial protection for criminal defendants or to a statute of limitations defense in Chapter 60 actions.

L.B. and M.B. contend they were prejudiced by the district court's delay in conducting the adjudication hearing and in finding K.D.B. and D.M.B. to be in need of care. It's not immediately clear how L.B. or M.B. might lay claim to the protection of a statute that wasn't passed to benefit them, even if they were able to show prejudice. Moreover, the evidence supported the adjudication of K.D.B. and D.M.B. as in need of care. Neither parent has shown that the delay deprived him or her of access to specific relevant evidence that would have demonstrated otherwise. See *In re L.C.W.*, 42 Kan. App. 2d at 297 (indicating actual prejudice may be a factor in weighing effect of noncompliance with K.S.A. 2016 Supp. 33-2251[c]). The delay similarly did not materially impede their ability to marshal evidence to oppose the State's motion to terminate their parental rights. A generic allegation of prejudice doesn't legally establish actual prejudice.

Here, of course, L.B. sought some of the continuances and, therefore, bears responsibility for the associated delays. We see no basis for relief because the record fails to establish the reasons for several continuances of the adjudication hearing. That, at best, is a subsidiary consideration in assessing the application of a directory time constraint and, as such, does not warrant relief to L.B. or M.B. they could not otherwise command.

Nonetheless, parents must be afforded constitutional due process as provided by the Fourteenth Amendment to the United States Constitution in actions under Revised Kansas Code for Care of Children. Procedural due process includes the right to be heard in a meaningful way at a meaningful time to prevent the loss of a liberty interest or property right. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citation omitted.]"); *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). A fundamental liberty interest is at stake in proceedings under the code, meaning considerable process is due the parents. An inordinate delay causing demonstrable legal prejudice to parents would implicate procedural due process protections. We don't have those circumstances here.[*]

[*]We assume without deciding that L.B. and M.B. as the adoptive parents of K.D.B. and D.M.B. have a fundamental liberty interest equivalent to the interest natural parents have in their offspring. The parties have not suggested otherwise, and we have no reason to explore the issue further, since our assumption would extend to L.B. and M.B. the fullest extent of procedural process possibly due them. But see *Santosky*, 455 U.S. at 753-54, 769 (repeatedly describing protected fundamental right as that of *natural* parents to raise their children); *compare Pierce v. Society of the Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (describing constitutionally protected liberty interest as that of "parents and guardians to direct the upbringing and education of children under their control").

In short, L.B. and M.B. have failed to set forth a basis for relief because of the delays in adjudicating K.D.B. and D.M.B as children in need of care.

SUFFICIENCY OF THE EVIDENCE

Before reviewing the challenges L.B. and M.B. make to the sufficiency of the evidence supporting the termination of their parental rights, we endeavor to explain the familial relationships in this case. In our view, they materially bear on the issues but have not been set out in the evidence with any deliberateness. We have pieced them together from testimony and exhibits in the appellate record. Some aspects of the family connections are clear; others are not.

L.B. and M.B. are the adoptive parents of K.D.B. and D.M.B. The girls are biological sisters. Their biological mother was adopted as a child by L.B.'s sister. So L.B. has described herself as K.D.B. and D.M.B.'s great aunt, although she is not a blood relative of the girls. L.B. and M.B. became foster parents to K.D.B. and D.M.B. in 2011 and adopted them in 2013. L.B. and M.B. adopted A.B. in 2009. She is otherwise related to L.B. in some way that's unclear from the record. At the time of the combined adjudication and termination hearing, K.D.B. was about 14 years old and D.M.B. was about 10 years old. A.B. is younger than K.D.B. and D.M.B. L.B. has been identified in exhibits admitted during the termination hearing as Native American. Based on other exhibits, M.B. appears to be Caucasian. Hearing testimony indicates A.B. is also Caucasian. K.D.B. and D.M.B are described as biracial with African-American and Caucasian natural parents.

At the conclusion of the hearing, the district court made factual findings, including credibility determinations, supporting both the adjudication of K.D.B. and D.M.B. as children in need of care and the termination of L.B. and M.B. as their parents. As we have already stated, we are obligated to respect those findings if they have support in the

7

evidence. And they do. We are likewise obligated to review all of the evidence in a light favoring the State, as the prevailing party.

*L.B.'s Claim of Insufficiency*

When K.D.B. and D.M.B. were taken into protective custody in May 2014, they were living with L.B and A.B. L.B. and M.B. had been separated for an extended period and were contemplating divorce. By the time of the hearing, they had reconciled and were again living together. We understand that a petition regarding A.B.'s status had been dismissed before then, and she had been returned to M.B.'s custody.

The district court found that L.B. repeatedly confined K.D.B. and D.M.B. to their bedroom for long periods without allowing them to eat or go to the bathroom. And on multiple occasions one or the other girl had urinated on herself. The district court also credited the girls' account that L.B. had struck them with an ashtray and slammed their heads together. The district court determined K.D.B. and D.M.B. to have been in need of care based on those circumstances. That evidence and those findings also bear on parental unfitness.

Based on strong circumstantial evidence, the district court found L.B. to have been regularly using methamphetamine. Authorities found methamphetamine in L.B.'s purse in 2014. About a year later, authorities found a glass pipe of the sort used to ingest methamphetamine and a syringe in her car. L.B. tested positive for methamphetamine twice. She also appeared to engage in a pattern of deliberately avoiding scheduled drug tests. The district court appropriately drew a negative inference from L.B.'s chronic avoidance of testing. L.B. denied using methamphetamine and blamed the positive tests on diet pills she had been prescribed and disclaimed knowledge of the drugs and drug paraphernalia the authorities found. The district court found L.B. unwilling or unable to acknowledge her substance abuse problem and, thus, unlikely to have dealt with it effectively.

8

Those findings are legally adequate to support a statutory finding of unfitness on several grounds. We need not serially address each ground the district court relied upon, since a single ground supported in the evidence may be sufficient to render a parent unfit. Here, the evidence warranted the conclusion that L.B. had engaged in conduct toward K.D.B. and D.M.B. of a physically or emotionally cruel or abusive nature, demonstrating unfitness as outlined in K.S.A. 2016 Supp. 38-2269(b)(2). The evidence also showed L.B. used a dangerous drug for sufficient time to render her unable to meet the ongoing needs of K.D.B. and D.M.B., demonstrating unfitness under K.S.A. 2016 Supp. 38-2269(b)(3). And L.B.'s unwillingness to admit and address her drug problem demonstrated a lack of effort to adjust her circumstances or conduct to meet the needs of K.D.B. and D.M.B., demonstrating unfitness under K.S.A. 2016 Supp. 38-2269(b)(8).

Having found unfitness on those bases, among others, the district court determined that L.B.'s circumstances were unlikely to change in the foreseeable future. On appeal, L.B. doesn't really offer a specific argument as to how the district court might have erred in reaching that conclusion. L.B.'s continuing drug problem, essentially spanning the life of this case, satisfies that requirement for termination—especially coupled with her failure to admit the problem, let alone address it.

Finally, the district court found that termination of L.B.'s parental rights would be in the best interests of K.D.B. and D.M.B. As directed by the language of K.S.A. 2016 Supp. 38-2269(g), the district court must accord "primary consideration to the physical, mental[,] and emotional health of the child." Again, L.B. offers no targeted counterpoint on appeal. We review the best-interests determination for abuse of discretion. We see nothing to indicate the district court misapplied the law or misunderstood the facts on this point. We then ask whether the conclusion falls within a broad range of reasonableness such that another district court would reach the same conclusion on the evidence compiled in this case. That call is an easy one—other district courts would find termination of L.B.'s rights to be in the girls' best interests. L.B.'s unresolved drug

9

problems combined with the abusive conditions she inflicted on K.D.B. and D.M.B. amply demonstrate an appropriate exercise of discretion in making the best-interests determination.

In addition, the evidence showed that K.D.B. and D.M.B. to be on the upswing in their foster placement after a rocky stretch. They seemed to be curtailing their sometimes impulsive behaviors that included acting out and fighting. D.M.B., in particular, frequently displayed disruptive conduct that got worse when she thought she might be returned to L.B.'s care. At the time of the hearing, she had been doing somewhat better. The girls also had a fractious relationship with A.B. that contributed to an unsettled home life with L.B. and M.B.

K.D.B. and D.M.B. both repeatedly stated they did not want to live with L.B. and M.B. Although the announced desires of a child cannot be controlling in a best-interests determination, a district court may weigh a strong, consistent preference on placement voiced by a child of suitable age and maturity to understand his or her circumstances as one factor among others in reaching a conclusion. The progress K.D.B. and D.M.B. were making in their foster placement and their strong preference to remain there enhanced the adequacy of the district court's best-interests determination in favor of termination.

*M.B.'s Claim of Insufficiency*

The evidence of M.B.'s unfitness may be less overt than L.B.'s drug abuse but perhaps as corrosive of a healthy parental relationship with K.D.B. and D.M.B. Throughout the course of this case, M.B. conveyed, at best, indifference to remaining the girls' adoptive father and frequently voiced a desire to be rid of them. In discussing K.D.B. and D.M.B. with various counselors and other social service providers, he characterized them as liars and thieves. M.B. believed they had falsely accused L.B. of hitting them and otherwise being abusive. Conversely, M.B. explicitly sought to continue in his role as A.B.'s adoptive father. M.B. also told caseworkers he believed K.D.B. and

D.M.B. were bad influences on A.B. About 2 weeks before the combined adjudication and termination hearing, M.B.'s lawyer told an assigned caseworker that M.B. was prepared to voluntarily relinquish his parental rights to K.D.B. and D.M.B.

The social workers assisting in reintegrating the family curtailed and eventually terminated visits between M.B. and A.B., who was in his care, and K.D.B. and D.M.B. as having a deleterious impact on the older girls. The precipitating event was a supervised visit among the four at a fast-food restaurant. According to the supervising caseworker, A.B. referred to an African-American employee of the restaurant as a "nigger." K.D.B. and D.M.B. told A.B. that wasn't a nice word and she shouldn't use it. A.B. then called K.D.B. and D.M.B. niggers. According to the supervisor, M.B. told A.B. it was okay and then characterized K.D.B. and D.M.B. as racist. D.M.B. became visibly distraught, and the supervisor ended the visit. The case management team concluded the visits "were not positive and healthy," so they were suspended.

What appears to be M.B.'s ingrained unease with K.D.B. and D.M.B. was not lost on the girls. They perceived a lack of caring and support from M.B. And, in turn, they lacked a sense of security and reliability that typically would accompany a healthy parent-child relationship. K.D.B. and D.M.B. consistently indicated to social workers that they felt emotionally unsupported by both L.B. and M.B. and, as we have already noted, did not want to be returned to their household. The district court found that, under the circumstances, M.B.'s conduct and admitted indifference to maintaining and cultivating an ongoing relationship with K.D.B. and D.M.B. rose to the level of unfitness.

Without cataloging each statutory basis the district court cited, the evidence supported a finding that M.B. was unfit as being mentally or emotionally neglectful, if not abusive, of K.D.B. and D.M.B., as outlined in K.S.A. 2016 Supp. 38-2269(b)(4). The district court's conclusion of unfitness on that score is fully consistent with the legislature's articulated policy that the Revised Kansas Code for Care of Children be

11

liberally construed to "make the ongoing physical, mental and emotional needs of the child decisive considerations in proceedings." K.S.A. 2016 Supp. 38-2201(b)(3).

We, therefore, affirm the district court finding that M.B. was unfit with respect to K.D.B. and D.M.B. We emphasize that the district court's ruling rested on something far different from a child's subjective perceptions of his or her parent's actions as uncaring slights, undeserved discipline, or stinginess in providing electronic gadgets and other amusements. Rather, the evidence cut to the core of the basic emotional stability the legislature recognized a parent necessarily must be expected to provide a child. M.B. failed to offer that stability to K.D.B. and D.M.B. The evidence included M.B.'s own words and conduct, as recounted by independent observers, that lent substantial corroborative weight to the children's negative perceptions and reactions.

As with L.B., M.B. provides no focused argument on appeal countering the district court's finding that the condition of unfitness would be likely to change in the foreseeable future or that termination of his parental rights was contrary to K.D.B. and D.M.B.'s best interests. Nothing in the record suggests M.B. intended to or even could change his deep-seated negative attitudes toward and emotionally corrosive interactions with K.D.B. and D.M.B. So the district court correctly concluded the unfitness would persist indefinitely. Without belaboring what we have already said, the very circumstances that demonstrate M.B.'s unfitness also establish why the girls' best interests—particularly their emotional health, in the words of K.S.A. 2016 Supp. 38-2269(g)—would be furthered by termination of his parental rights. The district court did not abuse its discretion in so ruling.

Affirmed.