No. 55,879

IN THE MATTER OF JEFFREY L. FINDLAY, A Minor Child, *Appellant*, v. STATE OF KANSAS, *Appellee*.

(681 P.2d 20)

Opinion filed April 27, 1984.

*Fred J. Logan, Jr.,* of Prairie Village, argued the cause and was on the brief for appellant.

*Bruce W. Beye,* assistant district attorney, argued the cause, and *Dennis W. Moore,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Jeffrey L. Findlay appeals his juvenile offender adjudication under the Kansas Juvenile Offenders Code (K.S.A. 1983 Supp. 38-1601 *et seq.*).

For his first issue, appellant contends the district court erred in refusing to grant him a jury trial as a matter of constitutional right.

In support of his contentions herein appellant relies heavily on *McKeiver v. Pennsylvania,* 403 U.S. 528, 29 L.Ed.2d 647, 91 S.Ct. 1976 (1971). In *McKeiver* the United States Supreme Court held juveniles had *no* federal constitutional right, pursuant to the Sixth and Fourteenth Amendments, to trial by jury. The court, in so doing, stated:

"The imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the factfinding function, and would, contrarily, provide an attrition of the juvenile court's assumed ability to function in a unique manner. It would not remedy the defects of the system. Meager as has been the hoped-for advance in the juvenile field, the alternative would be regressive,

would lose what has been gained, and would tend once again to place the juvenile squarely in the routine of the criminal process." 403 U.S. at 547.

## Further:

"If the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial." 403 U.S. at 550.

## Concluding:

"Finally, the arguments advanced by the juveniles here are, of course, the identical arguments that underlie the demand for the jury trial for criminal proceedings. The arguments necessarily equate the juvenile proceeding—or at least the adjudicative phase of it—with the criminal trial. Whether they should be so equated is our issue. Concern about the inapplicability of exclusionary and other rules of evidence, about the juvenile court judge's possible awareness of the juvenile's prior record and of the contents of the social file; about repeated appearances of the same familiar witnesses in the persons of juvenile and probation officers and social workers—all to the effect that this will create the likelihood of pre-judgment—chooses to ignore, it seems to us, every aspect of fairness, of concern, of sympathy, and of paternal attention that the juvenile court system contemplates.

"If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it." 403 U.S. at 550-51.

Appellant's argument on this issue rests on the tenuous proposition that district court proceedings involving acts by juveniles that would constitute felonies if committed by adults are essentially criminal trials under Kansas law. This concept is in diametric conflict with the intent of the Kansas Juvenile Offenders Code as specifically expressed in K.S.A. 1983 Supp. 38-1601 which provides:

"K.S.A. 1982 Supp. 38-1601 through 38-1685 shall be known and may be cited as the Kansas juvenile offenders code and shall be liberally construed to the end that each juvenile coming within its provisions shall receive the care, custody, guidance, control and discipline, preferably in the juvenile's own home, as will best serve the juvenile's rehabilitation and the protection of society. *In no case shall any order, judgment or decree of the district court, in any proceedings under the provisions of this code, be deemed or held to import a criminal act on the part of any juvenile; but all proceedings, orders, judgments and decrees shall be deemed to have been taken and done in the exercise of the parental power of the state.*" (Emphasis supplied.)

We conclude there is no federal or state constitutional right to a trial by jury in proceedings under the Kansas Juvenile Offend-

ers Code (see Kan. Const. Bill of Rights, § 5). This result is consistent with earlier decisions of this court decided before the 1982 adoption of the Kansas Juvenile Offenders Code. See *Hall v. Brown,* 129 Kan. 859, 861-62, 284 Pac. 396 (1930); *In re Turner,* 94 Kan. 115, 121-22, 145 Pac. 871 (1915).

For his second issue appellant contends the district court's denial of his request for a jury trial constituted an abuse of discretion.

At the heart of this issue is K.S.A. 1983 Supp. 38-1656 which provides:

"In all cases involving offenses committed by a juvenile which, if done by an adult, would make the person liable to be arrested and prosecuted for the commission of a felony, the judge may order that the juvenile be afforded a trial by jury. Upon an adjudication, the court shall proceed with disposition."

Appellant interprets this statute as investing in him the right to request a jury trial. He reasons the granting or denial of the request is, therefore, a matter of judicial discretion. The argument is then made the district court was required to state its reason for denying the request in order for appellate review to be had on whether or not the court abused its discretion. Finally, appellant requests this court to set standards to be applied in determining when a jury trial should be allowed. This entire rationale is specious.

K.S.A. 1983 Supp. 38-1656 does not grant to the respondent in the juvenile offender proceeding a right to request or demand a jury trial. Rather, the statute grants to the district court the *option of having a jury serve as the finder of fact rather than the court.* In exercising or declining to exercise the option, the district court is not required to make findings of fact or state its reasons therefor.

K.S.A. 1983 Supp. 38-1656 relative to optional jury trials is in sharp contrast to K.S.A. 1983 Supp. 38-1636 relative to authorization to prosecute a juvenile as an adult. The latter statute provides in part:

"(*a*) At any time after commencement of proceedings under this code against a respondent who was 16 or more years of age at the time of the offense alleged in the complaint and prior to entry of an adjudication or the beginning of an evidentiary hearing at which the court may enter adjudication as provided in K.S.A. 1982 Supp. 38-1655, the county or district attorney may file a motion requesting that the court authorize prosecution of the respondent as an adult under the applicable criminal statute.

. . . .

"(c) Upon receiving a motion to authorize prosecution as an adult, the court shall set a time and place for hearing on the motion. The court shall give notice of the hearing to the respondent, each parent of the respondent, if service is possible, and the attorney representing the respondent. The motion shall be heard and determined prior to any further proceedings on the complaint.

"(d) If the respondent fails to appear for hearing on a motion to authorize prosecution as an adult after having been properly served with notice of the hearing, the court may hear and determine the motion in the absence of the respondent. If the court is unable to obtain service of process and give notice of the hearing, the court may hear and determine the motion in the absence of the respondent after having given notice of the hearing once a week for two consecutive weeks in a newspaper authorized to publish legal notices in the county where the hearing will be held.

"(e) In determining whether or not prosecution as an adult should be authorized, the court shall consider each of the following factors: (1) The seriousness of the alleged offense and whether the protection of the community requires prosecution as an adult; (2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner; (3) whether the offense was against a person or against property, greater weight being given to offenses against persons, especially if personal injury resulted; (4) the number of alleged offenses unadjudicated and pending against the respondent; (5) the previous history of the respondent, including whether the respondent had been adjudicated a delinquent or miscreant under the Kansas juvenile code or a juvenile offender under this code and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence (6) the sophistication or maturity of the respondent as determined by consideration of the respondent's home, environment, emotional attitude, pattern of living or desire to be treated as an adult; (7) whether there are facilities or programs available to the court which are likely to rehabilitate the respondent prior to the expiration of the court's jurisdiction under this code; and (8) whether the interests of the respondent or of the community would be better served by criminal prosecution. The sufficiency of evidence pertaining to any one or more of the factors listed in this subsection shall not in and of itself be determinative of the issue. Subject to the provisions of K.S.A. 1982 Supp. 38-1653, written reports and other materials relating to the respondent's mental, physical, educational and social history may be considered by the court.

"(f) The court may authorize prosecution as an adult upon completion of the hearing if the court finds that the respondent was 16 or more years of age at the time of the alleged commission of the offense and that there is substantial evidence that the respondent should be prosecuted as an adult for the offense with which the respondent is charged. In that case, the court shall direct the respondent be prosecuted under the applicable criminal statute and that the proceedings filed under this code be dismissed."

K.S.A. 1983 Supp. 38-1681 permits an appeal by the respondent from an order authorizing prosecution as an adult only after conviction unless the order attaches to future acts. K.S.A. 1983 Supp. 38-1682 permits the State to appeal from an order denying authorization to prosecute the respondent as an adult.

We conclude allowance of or failure to allow trial by jury in a juvenile offender proceeding pursuant to K.S.A. 1983 Supp. 38-1656: (1) is entirely at the district court's option; (2) involves no rights of either the State or the respondent; and (3) is not subject to appellate review.

The final issue on appeal is whether there was sufficient evidence to support the district court's finding the appellant had uttered a terroristic threat contrary to K.S.A. 21-3419.

K.S.A. 1983 Supp. 38-1654 imposes upon juvenile offender proceedings the same burden of proof as in criminal cases—proof beyond a reasonable doubt.

In *State v. Pham,* 234 Kan. 649, 675 P.2d 848 (1984), the applicable test on appellate review was stated as follows:

"In a criminal action where defendants contend the evidence at trial was insufficient to support their convictions, the standard of appellate review is: Does the evidence, when viewed in the light most favorable to the prosecution, convince the appellate court a rational factfinder could have found defendants guilty beyond a reasonable doubt? [Citations omitted.] Moreover, appellate courts look only to the evidence in favor of the verdict, *they do not weigh the evidence; and if the essential elements of the charge are sustained by any competent evidence, the conviction stands.* [Citations omitted.] A conviction of even the gravest offense may be sustained by circumstantial evidence." 234 Kan. at 667-68. (Emphasis supplied.)

K.S.A. 21-3419 provides:

"A terroristic threat is any threat to commit violence communicated with intent to terrorize another, or to cause the evacuation of any building, place of assembly or facility of transportation, or in wanton disregard of the risk of causing such terror or evacuation."

In the instant action the State had to establish:

1. The respondent threatened to commit violence;
2. That such threat was communicated with the intent to terrorize Mr. Clarence Capper; and
3. That this act occurred on or about the fifteenth day of April, 1983, in Johnson County, Kansas.

See PIK Crim. 2d 56.23.

In applying the heretofore stated appropriate standard of review, we conclude the evidence amply supports the district court's adjudication. Respondent believed a Mr. Clarence Capper owed him money. On April 15, 1983, respondent telephoned

Mr. Capper in Johnson County and demanded payment of the debt. The victim testified in part as follows:

"Q. What did Mr. Findlay say to you?

"A. Well, he said that I owed him some money and then he goes, 'Well, you're not paying me' and he went off and threatened me.

"Q. Excuse me. When you say he 'went off', what do you mean?

"A. All right. He threatened first to shoot me and then he—you know, after he found out that that would not work he said that he would get this 24-year-old on me and this 24-year-old was described as a biker and he said that he was coming over to kill me. He said 'I'm going to come over and kill you'."

For clarification, the individual referred to as the "biker" also talked to the victim in the same telephone call and threatened to kill the victim. This occurred after the respondent had talked to the victim. Respondent admitted a conversation occurred but denied uttering a threat.

The judgment is affirmed.