No. 100,334

STATE OF KANSAS, *Appellee*, v. SARAH FISCHER, *Appellant*.

(203 P.3d 1269)

Opinion filed March 27, 2009.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Stephen N. Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Pursuant to a plea agreement, Sarah Fischer pled guilty to two felony charges in February 2008. The plea agreement indicated that Fischer's anticipated criminal history score would be "A," which was confirmed at sentencing without objection. The calculation of Fischer's criminal history score under the Kansas Sentencing Guidelines Act (KSGA) included juvenile adjudications.

After being sentenced to a controlling prison term of 40 months, Fischer filed a timely notice of appeal, challenging her criminal history score on two bases: (1) her juvenile adjudications could not be used in the calculation because she did not have a right to a jury trial in those proceedings; and (2) her prior convictions could not enhance her sentence because they were not proved to a jury beyond a reasonable doubt. The appeal was transferred to this court pursuant to K.S.A. 20-3018(c). We affirm.

*JURISDICTION*

Before proceeding to the defendant's issues, we first address the State's principal argument that we lack jurisdiction to review Fischer's sentence. The State's brief appears to blend an argument that Fischer failed to preserve the issue for appeal by objecting in the trial court with an argument that we cannot review a presumptive sentence on direct appeal. See K.S.A. 21-4721(c)(1) (an appellate court shall not review "[a]ny sentence that is within the presumptive sentence for the crime"). Regardless of the State's precise complaint, we have authority to consider the issue.

In *State v. Pennington*, 276 Kan. 841, 80 P.3d 44 (2003), the defendant argued that his criminal history should have been pled in the complaint and proved to a jury. The State countered that the defendant had failed to preserve the issue by not objecting to his criminal history score in the district court. The *Pennington* court declared that

"an appellate court may review a claim that the sentencing court erroneously included recognition of a prior conviction notwithstanding the defendant's failure to object to his or her criminal history score. K.S.A. 21-4721(e)(2); *State v. Pope*, 23 Kan. App. 2d 69, 79, 927 P.2d 503 (1996)." 276 Kan. at 851.

The statute to which *Pennington* cited, K.S.A. 21-4721(e)(2), provides:

"(e) In any appeal, the appellate court may review a claim that:

. . . .

(2) the sentencing court erred in either including or excluding recognition of a prior conviction or juvenile adjudication for criminal history scoring purposes."

Here, the issue raised is a constitutional challenge to the recognition of prior convictions and juvenile adjudications for criminal history scoring purposes. K.S.A. 21-4721(e)(2) grants us authority to review that question "[i]n any appeal." *Cf. State v. Barnes*, 278 Kan. 121, 124, 92 P.3d 578 (2004) (citing K.S.A. 21-4721(e)(3) as authority to review crime severity level).

The State's focus on the appellate review preclusion provision of K.S.A. 21-4721(c)(1) to the exclusion of the appellate review authority granted in K.S.A. 21-4721(e)(2) is misplaced. "Presumptive sentence" is defined as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the current crime of conviction and the offender's criminal history." K.S.A. 21-4703(q). If the sentencing court errs in determining either factor (criminal history score or crime severity level), then that error results in an erroneous classification of the offender's applicable grid box. Accordingly, a term of imprisonment drawn from an erroneously classified grid box cannot be deemed a "presumptive sentence" within the meaning of K.S.A. 21-4721(c)(1). We will proceed to the merits.

## JUVENILE ADJUDICATIONS

Fischer contends that without the inclusion of her juvenile adjudications, her criminal history score would have been "H" and her presumptive sentence would have been 19 to 21 months' imprisonment. Therefore, she asserts that the use of her prior juvenile adjudications increased her punishment.

Pointing to *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), Fischer argues that because the adjudications were not proved to a jury beyond a reasonable doubt, their use to enhance her sentence violated her right to due process and right to a jury trial under the Sixth and Fourteenth Amend-

ments to the United States Constitution. She also declares that the calculation violated §§ 1, 5, and 10 of the Kansas Constitution Bill of Rights, albeit she provides no separate argument on state grounds. Fischer's constitutional challenge presents a question of law subject to unlimited review. See *State v. Allen*, 283 Kan. 372, 374, 153 P.3d 488 (2007).

Fischer acknowledges that *Apprendi* excepted prior convictions from its requirement that sentence-enhancing factual findings must be made by a jury. 530 U.S. at 496. However, Fischer contends that her juvenile adjudications do not qualify as "prior convictions" for purposes of the exception because the juvenile code did not guarantee her a right to trial by jury. See K.S.A. 38-1656 (repealed January 1, 2007) (judge *may* order jury trial in certain cases); *Findlay v. State*, 235 Kan. 462, 466, 681 P.2d 20 (1984) (jury trial in juvenile proceeding solely at the option of the court; respondent had no right to jury trial or right to appellate review).

Fischer concedes that we have previously considered and rejected her *Apprendi*-based argument. In *State v. Hitt*, 273 Kan. 224, 229, 42 P.3d 732, *cert. denied* 537 U.S. 1104 (2003), this court considered the question "whether the absence of the jury trial safeguard in juvenile adjudications is enough to remove it from the narrow exception for prior convictions built into the *Apprendi* rule." *Hitt* answered that question in the negative, finding that "[j]uvenile adjudications are included within the historical cloak of recidivism and enjoy ample procedural safeguards" to permit them to be encompassed within the *Apprendi* exception for prior convictions. 273 Kan. at 236. Accordingly, *Hitt* ruled that "[j]uvenile adjudications need not be charged in an indictment or proven to a jury beyond a reasonable doubt before they can be used in calculating a defendant's criminal history score under the KSGA." 273 Kan. at 236.

Fischer argues that we must revisit the *Hitt* holding because of our subsequent decision in *In re L.M.*, 286 Kan. 460, 186 P.3d 164 (2008). *In re L.M.* reviewed the changes in the statutory provisions governing juvenile adjudications since *Findlay*, which held that juveniles did not have a constitutional right to a jury trial under either the federal or state constitutions. The *In re L.M.* court concluded:

"These changes to the juvenile justice system have eroded the benevolent parens patriae character that distinguished it from the adult criminal system. The United States Supreme Court relied on the juvenile justice system's characteristics of fairness, concern, sympathy, and paternal attention in concluding that juveniles were not entitled to a jury trial. *McKeiver*, 403 U.S. at 550. Likewise, this court relied on that parens patriae character in reaching its decision in *Findlay*. However, because the juvenile justice system is now patterned after the adult criminal system, we conclude that the changes have superseded the *McKeiver* and *Findlay* Courts' reasoning and those decisions are no longer binding precedent for us to follow. Based on our conclusion that the Kansas juvenile justice system has become more akin to an adult criminal prosecution, we hold that juveniles have a constitutional right to a jury trial under the Sixth and Fourteenth Amendments. As a result, K.S.A. 2006 Supp. 38-2344(d), which provides that a juvenile who pleads not guilty is entitled to a 'trial to the court,' and K.S.A. 2006 Supp. 38-2357, which gives the district court discretion in determining whether a juvenile should be granted a jury trial, are unconstitutional." 286 Kan. at 469-70.

The current juvenile code is referred to as the Revised Kansas Juvenile Justice Code (KJJC), K.S.A. 2008 Supp. 38-2301 *et seq.* Fischer points out that most of the statutory changes on which *In re L.M.* relied to find that juvenile proceedings are now akin to adult prosecutions occurred in 1996 and 1997. Therefore, she theorizes that if those statutory changes effected an adult-like system under which a jury trial is now constitutionally required, then all juvenile proceedings since the 1996-97 enactment of the statutory amendments have lacked adequate procedural protections. The apparent suggestion being that *In re L.M.* destroyed *Hitt*'s adequate safeguards rationale. Accordingly, Fischer declares all post-1996-97 adjudications to be constitutionally infirm.

Fischer points to the analogy drawn in *State v. LaMunyon*, 259 Kan. 54, 62, 911 P.2d 151 (1996), which found that juvenile adjudications could be used for criminal history purposes in the same way that uncounseled adult misdemeanor convictions that did not result in jail time could be counted. See *State v. Delacruz*, 258 Kan. 129, 135-36, 899 P.2d 1042 (1995) (finding uncounseled adult misdemeanor convictions resulting in no jail time can be included in KSGA calculation of criminal history score). She says that after *In re L.M.*, the more appropriate analogy is to equate post-1996-97 juvenile adjudications with uncounseled adult misdemeanor

convictions in which jail time *was* ordered, which *Delacruz* said could not be counted for criminal history scoring. 258 Kan. at 136.

The fallacy with that analogy is that when *Delacruz* was decided, an uncounseled adult misdemeanor conviction resulting in jail time was already deemed to be an unconstitutional conviction pursuant to the holdings in *Scott v. Illinois*, 440 U.S. 367, 59 L. Ed. 2d 383, 99 S. Ct. 1158 (1979), and *Argersinger v. Hamlin*, 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972). To the contrary, *In re L.M.* did not declare all juvenile adjudications after the 1996-97 statutory amendments to be unconstitutional adjudications. The opinion took pains to clarify:

"The right to a jury trial in juvenile offender proceedings is a new rule of procedure; it does not operate retroactively. It does not create a new class of convicted persons, but merely raises ' "the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." ' *Drach v. Bruce*, 281 Kan. 1058, 1073, 136 P.3d 390 (2006), *cert. denied* 127 S. Ct. 1829 (2007) (quoting *Schriro v. Summerlin*, 542 U.S. 348, 352, 159 L. Ed. 2d 442, 124 S. Ct. 2519 [2004]). This right will apply only to cases pending on direct review or not yet final on the date of filing of this opinion." 286 Kan. at 473-74.

The obvious intent of *In re L.M.* was to avoid invalidating prior, final juvenile adjudications. *Cf. Hitt*, 273 Kan. at 235 (discussing practical implications of excluding juvenile adjudications from KSGA criminal history scoring and declining to create such problems in the absence of a clear United States Supreme Court mandate). Thus, when Fischer was adjudicated, she received all of the process she was due and was afforded all of the constitutional protections then required in such proceedings. Accordingly, we find that the holding in *Hitt* remains valid for all juvenile adjudications that were final on June 20, 2008, the date *In re L.M.* was filed. Because Fischer's juvenile adjudications were final, they were "prior convictions" under the *Apprendi* exception, and the district court properly included them in her criminal history scoring.

## PRIOR CONVICTIONS

Alternatively, Fischer argues that the use of any of her prior convictions or adjudications to enhance her sentence violated her rights under the Sixth and Fourteenth Amendments. Essentially,

she asks us to accept her prediction that the United States Supreme Court will modify its *Apprendi* holding to eliminate the express exception for prior convictions, *i.e.*, that the Court will someday require all sentence-enhancing facts, including prior convictions, to be pled and proved to a jury beyond a reasonable doubt.

We have previously, and repeatedly, declined the invitation to prognosticate. See *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002); see also *State v. Gonzalez*, 282 Kan. 73, 118, 145 P.3d 18 (2006); *State v. Manbeck*, 277 Kan. 224, 229, 83 P.3d 190 (2004) (reaffirming *Ivory*). We will continue to wait for the Supreme Court to tell us that it has overruled *Apprendi*'s explicit prior conviction exception.

Affirmed.

DAVID J. KING, District Judge, assigned.