NOT DESIGNATED FOR PUBLICATION

No. 118,535

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL L. GASPER, JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed February 22, 2019. Affirmed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Audrey D. Koehler*, legal intern, *Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ATCHESON and GARDNER, JJ.

PER CURIAM: Defendant Michael L. Gasper, Jr., appeals the Sedgwick County District Court's denial of a motion he filed before sentencing to withdraw his guilty plea to attempted rape. Gasper cited general dissatisfaction with the performance of one of his lawyers and the comparatively short time he had to consider the plea agreement the State offered. We review rulings on motions to withdraw pleas for abuse of judicial discretion. We find none here and affirm the district court.

1

FACTUAL AND PROCEDURAL HISTORY

The State charged Gasper in March 2016 with six serious felonies including aggravated kidnapping and three counts of rape stemming from an extended attack on his ex-wife in her home earlier that month. Their young children were in the home and may have witnessed at least part of the criminal episode. The State later added two misdemeanor charges for violations of a protective order. Kenneth Newton, a lawyer with the Sedgwick County Public Defender's Office, represented Gasper from March through October. In early November, the district court appointed Quentin Pittman to replace Newton.

In September, the State moved to admit as other crimes evidence under K.S.A. 2015 Supp. 60-455 Gasper's 2004 convictions for sex offenses committed against a former girlfriend, along with the circumstances of those crimes and statements he later made during an evaluation at Larned State Hospital. The district court granted the motion following a hearing in early October, meaning the jurors in this case would hear that evidence.

The State later extended a plea offer to Gasper through his court-appointed lawyer that called for an agreed-upon sentence in excess of 54 years in prison. At the time, Gasper was about 31 years old. If convicted as charged at trial, Gasper faced a sentence of life in prison without parole because he qualified as an aggravated habitual sex offender based on his past convictions. See K.S.A. 2017 Supp. 21-6626. On Pittman's advice, Gasper rejected the offer.

Shortly before trial—the record isn't entirely clear on exactly when—the State extended another offer: (1) Gasper could plead guilty to one count of attempted rape as a persistent sex offender, doubling the presumptive midrange guidelines sentence under K.S.A. 2015 Supp. 21-6804(j)(1) to 494 months in prison; (2) the State and Gasper would

2

jointly recommend a 494-month sentence to the district court; (3) and the State would dismiss all of the other charges. Pittman presented the offer to Gasper several days before trial and told him the State required a prompt response. The amended charge of attempted rape eliminated the mandatory life-without-parole sentence and offered Gasper some chance at getting out of prison. Although the prison sentence was just over 41 years, Pittman recommended Gasper take the offer, since he was likely to be convicted, especially given the other crimes evidence the district court had ruled the State could present to the jury.

Gasper accepted the State's proposal. After Gasper signed an agreement outlining the terms, the district court held a hearing in early February 2017 that included a discussion of the plea, the maximum possible sentence, and the rights Gasper would be giving up by entering a plea rather than going to trial. Gasper told the district court he had not been threatened or otherwise pressured into pleading and had adequate time to discuss the case and the plea with Pittman. Gasper pleaded guilty to the attempted rape charge. The district court found the plea to be knowing and voluntary and adjudged Gasper guilty. The district court scheduled a sentencing hearing for late March.

On his own, Gasper drafted a motion to withdraw his plea and filed it about 10 days before the sentencing hearing. In the motion, Gasper asserted without elaboration that he was innocent; his lawyer, who he did not identify by name, "failed to advocate for him"; he "always planned on going to trial"; he felt pressured to accept the plea, especially by repeated comments from his lawyer that he faced life in prison if convicted at trial; he had inadequate time to consult with his lawyer about the case generally and the plea particularly; and his lawyer failed "to ask sufficient and necessary questions at the preliminary hearing," undercutting his confidence in his legal representation. The district court appointed Gerard Scott to represent Gasper on the motion and set a hearing.

3

Gasper and Pittman testified at the hearing in August 2017. Gasper reiterated that he had planned to go to trial. He said he felt rushed and pressured into accepting the plea and, during the hearing, referred to the district court's ruling allowing the State to admit the other crimes evidence. Gasper testified that he did not understand that he could have appealed that ruling, so he took the plea deal. Gasper explained that had he known he could appeal that ruling, he would have gone to trial. According to Gasper, he was given four hours to accept or reject the plea offer because of the immediately impending trial.

Pittman outlined the progression of the case, the two plea offers from the State, and his discussions with Gasper. Pittman said he explained to Gasper what he considered the potentially devastating impact of the 60-455 evidence and Gasper agreed with that assessment. He testified he went over the final plea offer from the State with Gasper. According to Pittman, Gasper understood the terms of the agreement, including the lengthy prison sentence. Pittman said he and Gasper had talked about potential pleas over the course of his involvement in the case. Pittman testified Gasper had suggested he would view a sentence of around 247 months as an acceptable plea, but the State wouldn't consider it. So the State's final offer fell between that and what Gasper faced if convicted at trial. Pittman testified that Gasper "wasn't thrilled" about the plea agreement but neither expressed hesitancy in going forward with it nor asked for more time to think about it.

In ruling on the motion, the district court largely dismissed Gasper's testimony as "self-serving and uncorroborated" and "not . . . credible." The district court recognized the governing legal standard to be the *Edgar* factors and applied those to the hearing evidence. See *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The district court denied Gasper's motion.

The district court later sentenced Gasper to serve 494 months in prison, consistent with the plea agreement, followed by lifetime postrelease supervision. In addition, Gasper

4

will be required to register and report as a sex offender under the Kansas Offender Registration Act, K.S.A. 2017 Supp. 22-4901 et seq., upon his release from prison. Gasper has appealed the district court's denial of his motion to withdraw his plea and the district court's use of his past convictions in establishing his criminal history.

LEGAL ANALYSIS

*Motion to Withdraw Plea*

A defendant has the right to withdraw a plea before sentencing for "good cause" and in the district court's "discretion." K.S.A. 2017 Supp. 22-3210(d)(1). District courts should look at three primary factors to determine if a defendant has shown good cause to withdraw a plea: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. See *State v. Garcia*, 295 Kan. 53, 62-63, 283 P.3d 165 (2012) (noting that these considerations—commonly known as the *Edgar* factors—establish a sound benchmark); *State v. Williams*, 290 Kan. 1050, 1053, 236 P.3d 512 (2010). All three factors need not favor the defendant to permit relief from a plea, and the district court should consider other relevant circumstances based on the facts of the particular case. See *Garcia*, 295 Kan. at 63 (district court not confined to *Edgar* factors); *Williams*, 290 Kan. at 1054 (all of the *Edgar* factors need not favor defendant; court may consider other circumstances); *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010).

Because the governing statute expressly affords the district court discretion in ruling on a defendant's motion to withdraw a plea before sentencing, an appellate court reviews the determination for abuse of discretion. *State v. White*, 289 Kan. 279, 284-85, 211 P.3d 805 (2009). A district court abuses its discretion if the result reached is "arbitrary, fanciful, or unreasonable." *Unruh v. Purina Mills*, 289 Kan. 1185, 1202, 221

5

P.3d 1130 (2009). That is, no reasonable judicial officer would have come to the same conclusion if presented with the same record evidence. An abuse of discretion may also occur if the district court fails to consider or to properly apply controlling legal standards. *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009). A district court errs in that way when its decision "'goes outside the framework of or fails to properly consider statutory limitations or legal standards.'" 288 Kan. at 299 (quoting *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 [2007]). Finally, a district court may abuse its discretion if a factual predicate necessary for the challenged judicial decision lacks substantial support in the record. *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011) (outlining all three bases for an abuse of discretion). On review, we are bound by the district court's credibility determinations and may not reweigh the evidence the parties presented during the hearing on Gasper's motion. *State v. Anderson*, 291 Kan. 849, Syl. ¶ 3, 249 P.3d 425 (2011) (noting deference to credibility findings and prohibition on weighing of conflicting evidence and applying rule to determination of motion to withdraw plea).

The first *Edgar* factor looks at the competence of the defendant's legal representation leading up to the plea and weighs both the quality of the representation and its effect. To satisfy this factor, the defendant must show the representation amounts to "lackluster advocacy," a less demanding standard than incompetence violating the right to counsel protected in the Sixth Amendment to the United States Constitution. See *State v. Schaefer*, 305 Kan. 581, 589, 385 P.3d 918 (2016). And the defendant must show prejudice as a result of the substandard representation. In the context of a motion to withdraw a plea, the defendant has to establish he or she would have gone to trial rather than having entered the plea. See *State v. Richardson*, 307 Kan. 2, 6, 404 P.3d 671 (2017).

Gasper hasn't shown incompetent representation. The parties and the district court correctly focused on Pittman's performance, since he handled the plea negotiations. Pittman secured a plea agreement that afforded Gasper a fair chance of walking out of

6

prison, albeit as a senior citizen. Had Gasper gone to trial and been convicted, he would have been sentenced to life in prison without parole. In short, Gasper would have died behind bars. There was demonstrable benefit in avoiding that result. Likewise, Gasper has neither suggested nor shown that Pittman misgauged the strength of the State's case, especially given the admissibility of the 60-455 evidence entailing the conviction for a similar sex crime.

Although Gasper generically asserted his innocence in his motion, he never explained the basis for that claim either in the motion or during the hearing. Nor did he ever outline purported weaknesses in the State's case that pointed to a reasonable possibility a jury might acquit him. Similarly, while Gasper offered a conclusory opinion his lawyers "didn't advocate" for him, he didn't factually support the claim. Gasper never outlined specific things he asked Pittman to do in preparing the case that didn't get done. And he didn't contend Pittman did something he was instructed not to do.

Pittman testified to his extensive experience representing criminal defendants during a 16-year legal career, including a large number of clients charged with serious sex offenses. He also testified that he was prepared to try Gasper's case if the plea negotiations failed.

The evidence at the hearing failed to show incompetent or lackluster legal representation.

By way of completeness, we mention that Gasper never developed his complaint about the preliminary hearing. The record shows that Newton actually waived the preliminary hearing with Gasper's consent. We fail to see how Newton's decision directly affected Gasper's confidence in Pittman. Pittman did not suggest the absence of a preliminary hearing impeded his representation of Gasper generally or his trial preparation.

7

The remaining *Edgar* factors tend to overlap, and Gasper's stated reasons for wanting to withdraw his plea really bear on both of them. At the hearing, Gasper testified he felt pressured to take the plea deal and didn't have sufficient time—only several hours—to consider it. Gasper's testimony, of course, directly contradicted the representations he made to the district court during the plea hearing. Moreover, Pittman testified that Gasper didn't balk at or equivocate about accepting the plea offer. The district court found Gasper's testimony not credible on this point. The evidence also showed that Gasper and Pittman had been weighing various plea possibilities for months. So Gasper had a good idea of the sort of terms that likely would be involved and was aware of the distinctly limited prospects for a favorable outcome in a trial.

All of that cuts against Gasper's contention that he didn't have enough time to evaluate the plea offer before accepting it.

More particularly, Gasper asserted that he felt pressured because Pittman informed him (more than once) that he faced life in prison if he were to be convicted at trial. But that isn't undue or unfair pressure. That's sound legal advice. As everyone acknowledges, a conviction on the most serious charges the State had filed would result in a life sentence for Gasper without any chance for parole. Pittman would have been derelict if he failed to explain and, indeed, highlight the penal consequences of conviction.

During the hearing, Gasper claimed he did not understand that he could have appealed the district court's ruling on the 60-455 evidence and if he had known that he would have gone to trial. Gasper did not include that contention in his motion. But the claim appears to rest on Gasper's misunderstanding of the issue and the appellate process.

Gasper had no way to appeal the district court's ruling on the other crimes evidence in advance of trial. Gasper could only get appellate review by going to trial,

8

being convicted, and then raising the issue along with any other purported errors by the district court. So challenging the ruling would have required Gasper to risk a life sentence—the dire outcome he intended to avoid through the plea. Moreover, under K.S.A. 2017 Supp. 60-455(d), the State has extraordinarily broad latitude in prosecutions for sex crimes to admit a defendant's past sexual misconduct, including previous convictions. Appellate review of that kind of evidentiary ruling is quite deferential to the district court, so the chances of success on appeal would be limited. See *State v. Bowen*, 299 Kan. 339, Syl. ¶ 7, 323 P.3d 853 (2014). Although Gasper may have thought he was ill-informed about appellate review of the 60-455 evidence, the legal realities would not have changed his decision to enter a plea.

During the hearing Gasper testified that he thought the sentence called for in the plea agreement—494 months—was around 30 years rather than 41 years. Even assuming that to be true (and the district court presumably included that assertion in the testimony it found less than credible), nobody misled Gasper in that respect. He doesn't claim Pittman or the district court told him the plea agreement called for a sentence other than 494 months. According to Pittman, Gasper had said he would take a plea agreement for 247 months in prison, so he presumably had some idea of how long a sentence that would have been, and, in turn, he knew the State's offer called for twice as much time.

In his motion, Gasper complained he did not understand he would be on postrelease supervision for life. But the district court informed him at the plea hearing that lifetime postrelease supervision was among the statutory punishments he faced on the amended charge of attempted rape. The acknowledgement of rights Gasper signed before the plea hearing specifically included a handwritten entry—setting it apart from the typewritten portions of the document—that the postrelease supervision would be "lifetime." Gasper was informed and knew or should have known about the period of postrelease supervision.

9

Gasper does not allege that during the plea hearing the district court misinformed him about or inadequately described the rights he was giving up by pleading or the maximum sentence he faced. He does not suggest the district court pressured him to enter a plea or deprived him of an opportunity to talk with Pittman during the plea hearing. The transcript of the plea hearing reveals just the opposite.

As to the second and third *Edgar* factors, then, the evidence shows that Gasper was not misled, coerced, mistreated, or somehow otherwise taken advantage of. In turn, the evidence shows Gasper fairly and understandingly entered his plea of guilty. Considering the *Edgar* factors, Gasper has not established good cause to withdraw his plea. We see no other circumstances in the record that would augment Gasper's claim.

The district court understood and applied the law governing motions to withdraw pleas. It acknowledged and assessed the relevant evidence. The district court did not abuse its discretion in those ways by denying the motion. So we are left to ask whether no other district court would have ruled the same way under the circumstances. We say with confidence that the district court would not stand alone in its ruling.

*Determination of Criminal History*

For his other issue on appeal, Gasper contends the district court improperly considered his criminal history in imposing sentence. He argues that the district court's use of his past convictions in determining an appropriate sentence impairs his constitutional rights because the fact of those convictions was not determined beyond a reasonable doubt by the jury. Gasper relies on the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to support that proposition. He also acknowledges the Kansas Supreme Court has rejected that argument and has found the State's current sentencing regimen conforms to the Sixth and Fourteenth Amendments to the United States Constitution with respect to the use of a

10

defendant's past convictions in determining a presumptive statutory punishment. *State v. Fischer*, 288 Kan. 470, Syl. ¶ 4, 203 P.3d 1269 (2009); *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). We, therefore, decline his invitation to rule otherwise, especially in light of the Kansas Supreme Court's continuing affirmation of *Ivory*. *State v. Pribble*, 304 Kan. 824, 838-39, 375 P.3d 966 (2016); *State v. Hall*, 298 Kan. 978, 991, 319 P.3d 506 (2014).

Affirmed.