NOT DESIGNATED FOR PUBLICATION

No. 122,855

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

G.J.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Cowley District Court; CHRISTOPHER E. SMITH, judge. Opinion filed May 6, 2022. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Ian T. Otte*, deputy county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HURST, P.J., GARDNER, J. and PATRICK D. MCANANY, S.J.

PER CURIAM: A jury convicted G.J. of one count each of possession of marijuana with the intent to distribute, possession of drug paraphernalia, and consumption of alcohol by a minor. The jury acquitted G.J. of theft but could not decide on two charges of rape. G.J. later entered a guilty plea to a single amended charge of aggravated indecent liberties with a child older than 14 but younger than 16. G.J. appeals, arguing (1) K.S.A. 2018 Supp. 21-5705(g)(1) is unconstitutional as violating the Equal Protection Clause of the Fourteenth Amendment and section 1 of the Kansas Constitution Bill of Rights; (2) the district court erred by granting the State's motion to pursue adult prosecution; (3) the district court erred by denying his motion to sever the rape charges; and (4) the Kansas

1

Sentencing Guidelines Act violates his jury trial rights because it does not require the State to prove his criminal history score to a jury beyond a reasonable doubt. Finding no error, we affirm.

*Factual and Procedural Background*

In September 2018, G.J. and his friend R.E.L., born in 2001, went to a nearby river's edge to hang out with three juvenile females. After the two boys and three females parted ways, R.E.L. texted K.D., born in 2003, and invited her to come over to his and G.J.'s apartment to hang out. K.D. later reported to police that G.J. had raped her. While K.D. made this report, she also reported that while in the apartment she smelled marijuana, saw a glass jar containing marijuana, and believed they were cooking marijuana brownies.

Arkansas City police officers got a search warrant for G.J.'s apartment and found five individually wrapped marijuana brownies, brownie mix, a pan full of marijuana to "dry out," drug distribution paraphernalia, drug use paraphernalia, G.J.'s cell phone, empty liquor and beer bottles, and evidence of other offenses irrelevant to this appeal. Officers later got a search warrant for G.J.'s cell phone and found messages showing G.J. was offering and arranging sales of marijuana brownies.

G.J. was born in October 2000 and the alleged offense occurred just three weeks shy of his 18th birthday. Based on the evidence, the State filed a juvenile offender case against G.J. alleging rape, possession of marijuana, possession of drug use paraphernalia, and minor in consumption of alcohol. The State moved for adult prosecution or extended juvenile jurisdiction, and the district court scheduled a hearing for December 2018.

At the hearing, the State presented evidence on the eight statutory factors the district court would rely on in determining whether to allow the State to prosecute G.J. as

an adult. The State asked the district court to take judicial notice of at least three other cases in juvenile court filed against G.J. Sarah Bowman, Cowley County Youth Supervisor Officer I, testified about G.J.'s behavior, his history in the youth probation program, and the lack of more alternatives for G.J.'s rehabilitation. The district court granted the State's motion to proceed in adult criminal court.

The State then filed a complaint, amending counts two and three to possession with the intent to distribute marijuana and possession of drug sale paraphernalia, respectively, and adding a charge of misdemeanor theft. At the preliminary hearing, the district court added a second count of rape at the State's request.

G.J. moved the district court to sever the rape charges from the remaining charges, arguing the charges were unrelated to one another and requesting the district court to hold separate trials for (1) counts one and six, (2) counts two and three, and (3) counts four and five. The district court held a hearing on that motion and then denied it, finding that under Kansas caselaw interpreting the joinder statute the State had sufficient justification to try the charges together.

At G.J.'s jury trial, the State presented evidence on the six charges, including testimony, physical evidence, and video evidence. After the State rested its case, G.J. testified. He admitted having alcohol in his apartment when the police executed the search warrant and to drinking beer on occasion. G.J. testified his roommate made the brownies but admitted that the marijuana belonged to both him and his roommate. He testified that the sexual encounter with K.D. was consensual and that she at no time tried to stop him or indicated she was not consenting to the contact. He later admitted that the messages on his phone offering marijuana brownies for sale were his messages.

A jury convicted G.J. of one count each of possession of marijuana with the intent to distribute, possession of drug paraphernalia with the intent to use it, and consumption

3

of alcohol by a minor. The jury acquitted G.J. of theft but could not reach a verdict on the two rape charges. The district court declared a mistrial as to the rape charges and set the matter for a pretrial conference. G.J. later pleaded guilty to a reduced count of aggravated indecent liberties with a child older than 14 but younger than 16, and the State dismissed the second count of rape with prejudice.

The district court found G.J.'s criminal history score for the primary offense of aggravated indecent liberties with a child to be G and for his possession of marijuana with intent to distribute his criminal history score was I. The district court denied G.J.'s motion for departure and sentenced him to a controlling 128 months' imprisonment: 51 months for possession with intent to distribute consecutive to 77 months for the aggravated indecent liberties offense. The district court ordered the remaining jail sentences to run concurrent with each other and the 128-month controlling sentence.

G.J. timely appeals.

*Is K.S.A. 2018 Supp. 21-5705(g)(1) Unconstitutional on Equal Protection and Substantive Due Process Grounds?*

*Preservation*

G.J. first argues that K.S.A. 2018 Supp. 21-5705(g)(1) is unconstitutional as violating his equal protection and substantive due process rights. That statute defines "material," as used in the section criminalizing the unlawful cultivation or distribution of controlled substances, to mean: "the total amount of any substance, including a compound or a mixture, which contains any quantity of a controlled substance or controlled substance analog." K.S.A. 2018 Supp. 21-5705(g)(1). The quantity of the material containing any amount of marijuana determines the severity level of a marijuana distribution offense. See K.S.A. 2018 Supp. 21-5705(d).

4

But G.J. raises these constitutional issues for the first time on appeal, as he admits. The State contends that we should not reach these constitutional issues, citing our often-applied rule that issues not raised to the district court cannot be considered by this court on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). We agree that we cannot consider constitutional issues raised for the first time on appeal, absent some exception. G.J. raises two such exceptions here, arguing that his equal protection claim involves a question of law arising on proved or admitted facts determinative of the case, and that consideration of the issue is necessary to prevent the denial of a fundamental right. See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

But even though G.J. argues exceptions, we need not review his new claims.

> "The decision to review an unpreserved claim under an exception is a prudential one. *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017); *State v. Frye*, 294 Kan. 364, 369, 277 P.3d 1091 (2012). Even if an exception would support a decision to review a new claim, we have no obligation to do so. *Parry*, 305 Kan. at 1192.
> "We decline to utilize any potentially applicable exception to review Gray's new claim. Gray had the opportunity to present his arguments to the district court and failed to do so. This failure deprived the trial judge of the opportunity to address the issue in the context of this case and such an analysis would have benefitted our review. We therefore decline to address Gray's new arguments on appeal." *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020).

Here, as in *Gray*, this panel would have benefitted from a full factual development and the district court's analysis of these important constitutional issues that G.J. failed to raise.

The defendant contends that no rational basis exists for the Legislature's inclusion in the distribution statute of the weight of material containing a controlled substance and that doing so is arbitrary and unreasonable. But G.J. does not state whether his

constitutional claim is a facial challenge to the statute or an as-applied challenge. This is an important distinction because it "affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy.'" *Bucklew v. Precythe*, 587 U.S. ___, 139 S. Ct. 1112, 1127, 203 L. Ed. 2d 521 (2019).

A facial challenge is "an attack on a statute itself as opposed to a particular application" of that law. *City of Los Angeles v. Patel*, 576 U.S. 409, 415, 135 S. Ct. 2443, 192 L. Ed. 2d 435 (2015). In comparison, as its name suggests, an as-applied challenge contests the application of a statute to a particular set of circumstances, so resolving an as-applied challenge "necessarily requires findings of fact." *State v. Farmer*, No. 98,997, 2008 WL 5401338, at *4 (Kan. App. 2008) (unpublished opinion). Cf. *State v. Sims*, No. 114,959, 2019 WL 1087363, at *6 (Kan. App. 2019) (unpublished opinion) (finding factual and procedural record did not allow the court to assess merits of either an as-applied or a facial procedural due process argument because it did not know what additional facts either party would have presented if defendant had initially presented procedural due process challenge in district court).

It appears that G.J.'s equal protection claim is an as-applied challenge—he contends that if similar amounts of controlled substances are put in different materials, different severity levels can result for defendants convicted of distribution, without a rational basis. He put marijuana in brownies, but had he put marijuana in something weighing less than brownies, his severity level may have been less. He thus contends that the statute is unconstitutional as applied to him. However, because G.J. failed to bring this argument to the district court, the record is without information regarding the specifics of the "material" weighed, the potency, the effect of different modes of consuming marijuana, and numerous other factual considerations that may impact the legal analysis.

And the parties' briefs are not particularly well developed on the constitutional issues. For example, although G.J. concedes that the rational basis test applies, he suggests the lack of any stated legislative purpose, then assumes that one legitimate goal of the statute could be to prevent the spread of controlled substances. He then argues that for defendants who possess the same amount of controlled substances, punishing them differently based on the material the substance is in bears no rational relationship to *that* goal. But G.J.'s burden under the rational basis test is to "negative every conceivable basis which might support it." *Madden v. Kentucky*, 309 U.S. 83, 88, 60 S. Ct. 406, 84 L. Ed. 590 (1940). See *Peden v. State*, 261 Kan. 239, 258, 930 P.2d 1 (1996) ("The rational basis standard is a very lenient standard. All the court must do to uphold a legislative classification under the rational basis standard is perceive any state of facts which rationally justifies the classification."); see also *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993) (In such cases, the government has no obligation to produce evidence or empirical data to sustain rationality of a statutory classification—asserted rationale may rest on "rational speculation unsupported by evidence or empirical data.").

We think it better for the parties to develop these arguments at trial than for this court to speculate what those arguments could have been. We are a court of review, not a fact-finding court. *State v. Hutto*, 313 Kan. 741, 746, 490 P.3d 43 (2021); see *State v. Vonachen*, 312 Kan. 451, 457-58, 476 P.3d 774 (2020). In short, this court cannot assess G.J.'s equal protection and substantive due process claims without the facts necessary for the arguments, and we would have benefitted from the district court's opportunity to make those factual findings and address these claims. As a result, we decline to reach the merits of G.J.'s new constitutional claims.

*Did the District Court Err in Denying G.J.'s Motion to Sever the Rape Charges from the Drug-related Charges?*

G.J. next contends that the district court erred in denying his motion to sever the rape charges from the drug-related charges.

Before trial, G.J. moved the district court to sever the rape charges from the remaining charges, arguing the charges were unrelated to one another and requesting the district court to hold separate trials for (1) counts one and six, (2) counts two and three, and (3) counts four and five. But on appeal, G.J. argues only that joinder was not warranted under the "same act or transaction" condition precedent of K.S.A. 22-3202(1). That statute sets out three conditions under which the State may join multiple crimes in a single complaint: (1) same or similar character; (2) same act or transaction; or (3) two or more acts or transactions connected together or constituting parts of a common scheme or plan. *State v. Carter*, 311 Kan. 783, 793, 466 P.3d 1180 (2020).

G.J.'s argument rests on the premise that the district court relied on the second subsection of the statute—the "same act or transaction" condition precedent of K.S.A. 22-3202(1). We need not determine the correctness, however, of his argument that the alleged rapes were not part of the "same act or transaction" as the drug-related crimes, because our review of the record shows that the district court did not rely on that second condition. The fundamental premise of G.J.'s argument thus fails.

Although the district court did not explicitly state which condition it relied on, it did state that it found joinder proper under "the [*Smith-Parker*] rationale." See *State v. Smith-Parker*, 301 Kan. 132, 158, 340 P.3d 485 (2014). And *Smith-Parker* relies on only the third condition under K.S.A. 22-3202(1)—that the two charges were "connected together" or constituted parts of a common scheme or plan. 301 Kan. at 160.

8

Kansas courts have broadly construed the phrase "connected together" to apply in three situations: (1) when a defendant provides evidence of one crime while committing another; (2) when some of the charges are precipitated by the other charges; or (3) when all the charges stem from a common event or goal. *Carter*, 311 Kan. at 794. The district court reasoned that when law enforcement officers are investigating one crime, they need not turn a blind eye to evidence of other crimes. It found "sufficient justification" for the State to try the charges together because "the possession of marijuana and the possession of paraphernalia, as well as the minor in possession and possession of stolen property charges, all stem from the reporting of an alleged rape."

G.J. does not argue on appeal that the third condition does not apply or that the district court abused its discretion by denying severance. Nor does it appear that he would succeed in doing so. See *State v. Anthony*, 257 Kan. 1003, 1016-17, 898 P.2d 1109 (1995). We thus find the district court properly denied G.J.'s motion to sever the rape charges from the drug-related charges.

*Did the District Court Abuse its Discretion in Authorizing the State to Prosecute G.J. as an Adult?*

G.J. next contends that the district court abused its discretion by authorizing the State to prosecute him as an adult.

*Applicable Law*

The Revised Kansas Juvenile Justice Code, K.S.A. 2018 Supp. 38-2301 et seq., generally governs proceedings concerning juveniles. K.S.A. 2018 Supp. 38-2304. The State "may file a motion requesting that the court authorize prosecution of the juvenile as an adult under the applicable criminal statute." K.S.A. 2018 Supp. 38-2347(a). Under

Kansas law, the juvenile is presumed a juvenile until the State rebuts that presumption by a preponderance of the evidence. K.S.A. 2018 Supp. 38-2347(a).

In deciding whether to allow adult prosecution, the district court must consider these factors:  (1) the seriousness of the alleged offense; (2) whether the defendant committed the alleged offense in an aggressive, violent, premeditated, or willful manner; (3) whether the offense was against a person or against property, with greater weight given to offenses against persons; (4) the number of alleged offenses pending against the juvenile; (5) the previous history of the juvenile, including whether previously adjudicated a juvenile offender, as well as antisocial behavior or patterns of physical violence; (6) the sophistication or maturity of the juvenile, determined by the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult; (7) whether there are facilities or programs available to the court which are likely to rehabilitate the juvenile prior to the expiration of the court's jurisdiction under this code; and (8) whether the interests of the juvenile or of the community would be better served by criminal prosecution or extended jurisdiction juvenile prosecution. K.S.A. 2018 Supp. 38-2347(d)(1)-(8), (e). See *Makthepharak v. State*, 298 Kan. 573, 580, 314 P.3d 876 (2013) (explicitly stating that K.S.A. 38-1636(e), the predecessor to K.S.A. 2018 Supp. 38-2347(d), requires the district court to consider all eight factors); *In re D.D.M.*, 291 Kan. 883, 893-94, 249 P.3d 5 (2011).

The district court may authorize adult prosecution "if the court finds from a preponderance of the evidence that the alleged juvenile offender should be prosecuted as an adult for the offense charged." K.S.A. 2018 Supp. 38-2347(e)(1). We review the district court's factual findings for substantial competent evidence and review its assessment of the statutory factors for an abuse of discretion. *State v. Brown*, 300 Kan. 542, 546, 331 P.3d 781 (2014). But the insufficiency of evidence pertaining to any one or more of the factors by itself shall not determine the issue. K.S.A. 2018 Supp. 38-2347(d).

10

*Analysis*

G.J. first argues that the State failed to rebut the presumption that he was a juvenile by a preponderance of the evidence and therefore the district court's decision to certify G.J. was an abuse of the court's discretion. Later in his brief, G.J. argues the district court abused its discretion by certifying G.J. as an adult because it "(1) failed to adequately consider all aspects of the eight statutorily-required factors, (2) did not have substantial competent evidence on which to base its decision, and (3) was arbitrary and unreasonable."

The district court referenced and explained its reasoning for all eight factors. Although the district court must consider the eight statutory factors, it is not required to give equal weight to them. *Makthepharak*, 298 Kan. at 579-80; *State v. Hartpence*, 30 Kan. App. 2d 486, 492, 42 P.3d 1197 (2002). Similarly, the State need not present evidence supporting all eight factors. *State v. Irvin*, 16 Kan. App. 2d 214, 220, 821 P.2d 1019 (1991) (finding district court did not abuse its discretion because it considered all eight factors although State only presented evidence on six).

On appeal, G.J. addresses only factors 6 through 8—he does not dispute that substantial competent evidence supported the district court's findings on factors 1 through 5. We thus review only factors 6 through 8.

> *Factor 6 - The sophistication or maturity of the juvenile, determined by the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult*

G.J. argues the district court's decision "was based on errors of law and not supported by substantial competent evidence" because the district court considered G.J.'s home life and desire to be treated as an adult, but "ignored [G.J.'s] emotional attitude,

which reflected a pattern of immaturity." G.J. argues "no reasonable person would conclude that just because a child wants to be treated as an adult, it is necessarily appropriate to treat that child as an adult." He then argues that his desire for independence did not equate to sophistication and maturity beyond that of a typical teenager. In other words, G.J. argues the district court erred by considering only select portions of factor 6 and ignoring other portions.

But the district court's decision on this factor did not simply rely on G.J.'s "desire" to be treated as an adult. Rather, it relied on (1) the court's various interactions with G.J., (2) the court's previous decision granting G.J. permission to live with his grandparents, (3) G.J.'s father's repeated willingness to take G.J. back upon the district court's request, and (4) G.J.'s demonstrated independence in working a job and presumably supporting himself. The district court stated:

"I understand that [G.J.'s] home life was not of the greatest living with his father. The Court is aware of that, and the Court actually had granted permission to live with his grandparents on at least one occasion. But that's by [G.J.'s] own choosing. He chose not to obey his father's rules. His father was always willing and able to take him back each time the Court requested. He did live with his grandparents. He continued to display a pattern of behavior that was not rule-abiding.

"And then he began work—living on his own, demonstrating he was being independent by working at McDonald's, supporting himself for all intents and purposes. There was no evidence presented to the Court that he was not supporting himself."

The district court's decision on factor 6 is supported by substantial competent evidence. The district court discussed the entire factor, choosing only to comment on the direct evidence supporting that factor. And this factor requires the district court to review the maturity or sophistication of the juvenile by considering his or her home, environment, emotional attitude, pattern of living, *or* desire to be treated as an adult. K.S.A. 2018 Supp. 38-2347(d)(6). The statute, written in the disjunctive, lists several

12

facts the district court can look at to determine maturity or sophistication, but it does not require the court to address them all—so G.J.'s claimed error based on the district court's failure to address each item in this factor is unpersuasive.

> *Factor 7 - Whether facilities or programs are available to the court which are likely to rehabilitate the juvenile before the expiration of the court's jurisdiction under the juvenile code*

For factor 7, G.J. argues the district court's finding that he had exhausted all available rehabilitative services was not supported by substantial competent evidence. We disagree.

Sarah Bowman, a youth supervisor with Cowley County Youth Services testified on this topic. She testified that just before this case, Youth Services had offered G.J. a chance to attend moral reformation therapy (MRT)—a cognitive behavioral therapy group focusing on making good choices, owning your choices, and making long-term and short-term goals after being released from probation. G.J. participated in only 3 of 10 sessions, even though Bowman had arranged both the therapy and transportation. Bowman testified this is the most intensive training Youth Services is affiliated with and they have "nothing beyond" MRT to offer a juvenile for rehabilitative services.

Bowman also testified that during G.J.'s previous supervision, he had been ordered to participate and did participate in counseling at Four County Mental Health until his supervision was over. In her opinion, G.J. had exhausted all rehabilitative services that Youth Services could provide him.

Bowman then testified the only thing the district court could do that went *above* the intensive supervision she already tried was to order G.J.'s placement in a 24-hour-supervision facility, a "JJFC home" akin to a foster home. But because G.J. was 18 at the

13

time of the hearing, G.J. would need a specialized home to take him in, and that really "wouldn't be an option" because there were only two such homes in the area.

The district court credited Bowman's testimony in finding that G.J. had exhausted all the available help in Youth Services:

> "[I]f I look at what Ms. Bowman's testimony was in response to a question from Mr. Otte, the fact is, Ms. Bowman testified that Cowley County Youth Services has exhausted all services from this respondent. That is a strong statement. There doesn't seem to be any waffling. There didn't seem to be any:
> > "Well, we might go back and try this again.
> > "[G.J.] quite simply has exhausted the services. And the Court has no reason to doubt that."

G.J. asks us to find that the district court's reliance on Bowman's testimony was erroneous. But when determining whether substantial competent evidence exists, we accept as true all evidence and the inferences to be drawn from that evidence supporting or tending to support the district court's findings. In doing so, this court does not reweigh the evidence, substitute its evaluation of the evidence for the district court's, or pass upon witness credibility. *In re D.D.M.*, 291 Kan. at 893.

G.J. adds that the district court's decision on factor 7 lacks substantial competent evidence because Bowman also testified that she could have filed a probation violation and asked G.J. to be placed in the State's custody. But G.J. fails to shows that placing a person in the State's custody for a probation violation is reasonably considered a rehabilitative facility or program available to the court. Because Bowman testified that G.J. stopped going to MRT and that no other rehabilitative services were available for him, the district court's decision on factor 7 is supported by substantial competent evidence. See *In re D.D.M.*, 291 Kan. at 893 (defining substantial competent evidence as

14

"'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved'").

> *Factor 8 - Whether the interests of the juvenile or of the community would be better served by criminal prosecution or extended jurisdiction juvenile prosecution*

G.J. next argues that the district court failed to consider extended juvenile jurisdiction instead of adult prosecution.

But the record refutes that conclusion by showing that the district court specifically addressed "extended jurisdiction":

> "Now, whether the interests of the juvenile or the community would be better served by criminal prosecution or extended jurisdiction, I've weighed extended jurisdiction in this matter. And had there been any hint at all that there might be some services available to [G.J.], the Court might have considered that. But the fact of the matter is, there simply are not any services available.
>
> "So the Court looks at whether criminal prosecution is in the best interests of the juvenile and the community excuse me it's not the best interests. It's whether the interests would be better served. The Court believes that in this matter, if I were to order criminal prosecution it would be due to the seriousness of the charged crimes, and the allegations . . . in the case.
>
> "It also would be because [G.J.] has demonstrated a willingness to engage in manipulative criminal behavior, even while he was on supervision at the time these new offenses were alleged to have occurred.
>
> "So the Court does not see that adult prosecution would be out of the question in this matter. In fact, based solely on the—on the factors that I have given, the Court finds that criminal prosecution in this matter as an adult is warranted."

Thus, in reviewing whether adult prosecution or extended juvenile jurisdiction was more appropriate in G.J.'s situation, the district court properly considered Bowman's

15

testimony about the lack of available services for rehabilitation, the seriousness of the crimes charged, and G.J.'s "demonstrated behavior" toward others while on supervision for other crimes. As a result, substantial competent evidence supports the district court's decision on factor 8.

The district court's decision as a whole is supported by the evidence, see *Hartpence*, 30 Kan. App. 2d at 492, and the district court's decisions on each of the eight factors are supported by substantial competent evidence. See *In re D.D.M.*, 291 Kan. at 893. And no abuse of discretion in granting the State's motion for adult prosecution has been shown. See *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018) (A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact.).

*Did the District Court Violate G.J.'s Sixth and Fourteenth Amendment Jury Trial Rights?*

G.J. argues the State violated his Sixth and Fourteenth Amendment to the United States Constitution jury trial rights by failing to prove G.J.'s prior juvenile adjudications to a jury beyond a reasonable doubt, citing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

But, as G.J. recognizes, our Kansas Supreme Court rejected that argument by holding that the use of criminal history to calculate a presumptive sentence does not violate a defendant's Sixth and Fourteenth Amendment rights. See *State v. Sullivan*, 307 Kan. 697, 708, 414 P.3d 737 (2018) (reaffirming *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 [2002]); *State v. Fischer*, 288 Kan. 470, 475, 203 P.3d 1269 (2009) (juvenile adjudications final in June 2008 may be part of a defendant's criminal history score).

Because the Kansas Supreme Court has affirmed *Ivory* as recently as 2021, G.J. has no right to relief in this court. See *State v. Albano*, 313 Kan. 638, 643, 487 P.3d 750

(2021) (addressing jury trial right under the Kansas Constitution, as well as reaffirming *Ivory*); *Sullivan*, 307 Kan. at 708 (affirming *Ivory*); see also *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (finding Kansas Court of Appeals duty-bound to follow Kansas Supreme Court precedent unless some indication Supreme Court departing from previous position).

As a result, the district court did not err in using G.J.'s prior juvenile adjudications while sentencing him.

Affirmed.